UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOEL F. LEVY, D.D.S.,<br><br>            Plaintiff,<br><br>    -v-<br><br>PENN MUTUAL LIFE INSURANCE COMPANY<br>and DAVIES LIFE & HEALTH, INC.,<br><br>            Defendants. | 25-cv-8527 (JSR)<br><br>OPINION & ORDER |

JED S. RAKOFF, U.S.D.J.:

On October 15, 2025, plaintiff Joel F. Levy, a dentist licensed to practice in the State of New York, initiated this action against defendants Penn Mutual Life Insurance Company and Davies Life and Health, Inc. (collectively, "defendants"). See ECF No. 1 ("Compl."). Contending that defendants wrongfully terminated his benefits under two disability insurance policies that he purchased from Penn Mutual many decades ago, Levy brought claims for breach of contract and breach of the implied covenant of good faith and fair dealing. See id. ¶¶ 48-65, 71-81. He also sought a declaratory judgment that he is entitled to continued monthly residual disability benefits. See id. ¶¶ 66-70. On December 4, 2025, defendants moved to dismiss Levy's complaint in its entirety. See ECF No. 19. That motion was fully briefed on January 5, 2026. See ECF Nos. 20, 23-24. The Court determined that oral argument on the motion was unnecessary.

For the reasons set forth below, the Court hereby grants defendants' motion and dismisses Levy's complaint with prejudice.

1

I.    Factual Background

For the purpose of deciding defendants' motion, the Court assumes the truth of the non-conclusory allegations in Levy's complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In brief, those allegations are as follows:

Levy, a resident of Westchester County, New York, purchased the two long-term disability policies at issue in this action in 1988 and 1989, respectively. See Compl. ¶¶ 3, 11-13.[1] Levy, who at the time was beginning his career as a dentist, bought the policies "to provide future income protection in the event of disability." See id. ¶¶ 10-11. Levy paid monthly premiums for both policies from the time that he purchased them until ninety days after he qualified as disabled under the policies' terms. See id. ¶¶ 14, 50, 73.

The policies define the "Maximum Benefit Period," as relevant here, as "[y]our lifetime if disability starts before your 60th birthday, otherwise until your 65th birthday but not less than 24 months." Id. ¶ 18. The policies provide that, when a policyholder meets the definition of total disability, "we will pay you a benefit for each total disability that starts while this policy is in force," and such benefits will be paid "for as long as your total disability continues," except that "we will not pay benefits if the combined

_____

[1] Penn Mutual is a citizen of Pennsylvania, and Davies is a citizen of Massachusetts. See ECF No. 1 ¶¶ 4, 7; ECF Nos. 20, 23. Accordingly, there is no dispute that the Court has subject matter jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a).

period for which total and residual disability benefits are paid exceeds the Maximum Benefit Period." ECF No. 21-2 ("Policy") at 4.[2] The policies further provide that, when a policyholder meets the definition of residual disability, "we will pay you a benefit for each residual disability that starts while this policy is in force," and such benefits will be paid "for as long as your residual disability continues," except that "we will not pay residual disability benefits if the combined period for which total and residual disability benefits are paid exceeds: the Maximum Benefit Period; or 24 months after your 63rd birthday." Id.

On March 12, 2016, Levy suffered an accident as a result of which he experienced bone fractures, lower back pain, and tendonitis. Compl. ¶ 22. At the time, Levy was 55 years old. Id. Defendants paid Levy total disability benefits from March 12, 2016, through April 4, 2017. Id. ¶ 23. Defendants then paid Levy residual disability benefits from April 5, 2017, when he was 56 years old, through June 10, 2025, the date of his sixty-fifth birthday. Id. ¶ 24. When defendants terminated Levy's residual disability benefits, they stated that they did so in reliance on the policy provisions quoted above. See id. ¶¶ 26-27. At the time that defendants terminated his benefits, Levy was receiving

---

[2] Except where otherwise indicated, all quotations in this Opinion and Order omit citations, quotation marks, footnotes, brackets, ellipses, and other alterations in source material.

Quotations from the Policy are from the policy that Penn Mutual issued to Levy on April 10, 1989. See Policy at 1. The terms of that policy are identical in all relevant respects to the separate policy that Penn Mutual issued to Levy on March 29, 1988. See ECF No. 21-3.

a monthly disability income payment of $10,020. Id. ¶ 46. At that time, Levy continued to be residually disabled within the policies' definition. Id. ¶ 45.

II.  Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Because Rule 12(b)(6) "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it," Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006), courts may only consider materials beyond the four corners of a pleading in certain limited circumstances.[3] A pleading is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018). Here, there is no dispute that the insurance policies that Levy

---

[3] Apart from these circumstances, a court must either exclude extrinsic materials from its consideration or convert the motion to dismiss into a motion for summary judgment and provide the parties with an opportunity to conduct relevant discovery and submit supporting evidence. See Fed. R. Civ. P. 12(d).

purchased from Penn Mutual, while not attached to his complaint, are both incorporated in it by reference and integral to it. See id.

Where a motion to dismiss is granted under Rule 12(b)(6), "leave to amend the complaint should be refused only if there is no basis for concluding that plaintiff can state a claim and thus permitting an amendment would be futile." 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed. 2025); see also, e.g., Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006).

Under New York law, a court adjudicating an insurance coverage dispute is to construe an insurance policy "in a way that affords a fair meaning to all of the language employed by the parties . . . and leaves no provision without force and effect." Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 5 N.Y.3d 157, 162 (2005). "The initial interpretation of a contract," including an insurance policy, "is a matter of law for the court to decide," and "[p]art of this threshold interpretation is the question of whether the terms of the insurance contract are ambiguous." E.g., Hamilton Specialty Ins. Co. Inc. v. Kinsale Ins. Co., 613 F. Supp. 3d 735, 739 (S.D.N.Y. 2020). Policy language is unambiguous if it "provides a definite and precise meaning, unattended by danger of misperception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Id. (quoting Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012)). Where policy language is unambiguous, it must be given its "plain and ordinary meaning," and extrinsic evidence may not be considered. Hamilton Specialty Ins. Co.,

5

613 F. Supp. 3d at 740. Only where policy language is ambiguous -- that is, where it "is capable of more than one meaning when viewed objectively by a reasonably intelligent person" familiar with the entire agreement and relevant context -- may a court consider extrinsic evidence, id., in which case it usually follows, as a practical matter, that a motion to dismiss under Rule 12(b)(6) must be denied.

III. Analysis

For the reasons that follow, the Court concludes that the relevant provisions of Levy's policies are unambiguous and that defendants were entitled to terminate Levy's residual disability benefits when he reached his sixty-fifth birthday. Thus, Levy's primary claim for breach of contract claim must be dismissed. The Court further concludes that Levy's remaining claims must be dismissed because they are duplicative of his primary contract claim or because he lacks standing.[4]

A.    Breach of Contract

The gravamen of Levy's complaint is that defendants breached the terms of the policies when they terminated his residual disability benefits on June 10, 2025. Compl. ¶¶ 26-47. In doing so, defendants relied on the provision of the policies stating that Penn Mutual "will not pay residual benefits if the combined period for which total and residual disability benefits are paid exceeds: the Maximum Benefit

---

[4] Because the Court reaches these conclusions, it need not (and does not) decide whether Davies Life & Health, Inc., a third-party claims administrator that was allegedly responsible for the decision to terminate Levy's benefits, is a proper defendant in this case. See Compl. ¶ ECF No. 20 at 15-16; ECF No. 23 at 14-16; ECF No. 24 at 6-7.

Period; or 24 months after your 63rd birthday." Id. ¶ 27; Policy at 4. Levy contends that defendants' interpretation misconstrues the policy and that his combined period of total and residual disability benefits did not exceed 24 months after his 63rd birthday. Compl. ¶¶ 28-39. On Levy's view, the policies promise that, "[w]here disability begins before age 60, the Maximum Benefit Period is lifetime. The residual disability limitation applies only where the insured experiences a combined period of total and residual disability after age 63 that exceeds 24 months." ECF No. 23 at 7.

The policies' unambiguous language does not, however, support Levy's interpretation. The Court begins by examining section 3 of the policies, which is entitled "Disability Benefits." See Policy at 4-5. That section is divided into subsections that include "Total Disability Benefit" and "Residual Disability Benefit," among others. See id. Because Levy does not allege that he was totally disabled or was receiving total disability benefits at the time that defendants terminated his benefits, the Court focuses on the subsection entitled "Residual Disability Benefit." As noted above, that subsection provides that "we will not pay residual benefits if the combined period for which total and residual disability benefits are paid exceeds: the Maximum Benefit Period; or 24 months after your 63rd birthday." Id. at 4. Plainly, therefore, residual benefits are not due if the "combined period for which total and residual disability benefits are paid" exceeds either (1) the Maximum Benefit Period or (2) twenty-four months after an insured's sixty-third birthday. See id. Because these

two prongs are connected by the disjunctive "or," benefits are not due if an insured satisfies either prong.

Under Levy's policies, his "Maximum Benefit Period" was his lifetime because his disability began before his sixtieth birthday. See id. at 1 (defining "Maximum Benefit Period"). Of course, the combined period for which he received total and residual disability benefits did not exceed his lifetime. That means that defendants are entitled to cease paying his residual disability benefits only if the "combined period for which total and residual disability benefits are paid" exceeded twenty-four months after Levy's 63rd birthday. See id. at 4.

That condition has plainly been met. Levy's complaint alleges that he received total disability benefits for approximately twelve and a half months, from March 12, 2016, through April 4, 2017. Compl. ¶ 23. It also alleges that he received residual disability benefits for more than eight years, from April 5, 2017, through June 10, 2025. See id. ¶¶ 24, 26. The "combined period" for which Levy received these benefits is, therefore, more than nine years. See Policy at 4. And that combined period "exceed[ed] . . . 24 months after [his] 63rd birthday" because it encompassed the twenty-four months that elapsed after Levy's 63rd birthday, in addition to more than seven earlier years. See id.; Compl. ¶¶ 23-24, 26. Thus, defendants were entitled to cease paying benefits on Levy's sixty-fifth birthday.[5]

---

[5] A different outcome would have obtained had Levy been totally disabled. The policies' provisions concerning total disability limit

Levy's attempts to avoid this result are all unavailing. First, Levy contends that the phrase "combined period of total and residual disability" requires him to have been both totally and residually disabled after age 63. ECF No. 23 at 7-9. But the policy does not provide, and ordinary rules of grammar do not require, that the "combined period" include at least one day of each kind of disability. To take a simple hypothetical: if a grocery store prohibits its customers from purchasing more than a "combined total" of ten apples and oranges, a shopper would be no more entitled to purchase a dozen apples than she would be entitled to purchase a half-dozen apples and a half-dozen oranges. As defendants point out, Levy's interpretation would read into the policies a requirement that an insured receive both total and residual disability benefits after his or her sixty-third birthday. See ECF No. 24 at 3. The Court is not free to add such a term to the parties' contract.

Second, Levy contends that the policies provide for a lifetime Maximum Benefit Period "[w]here disability begins before age 60." ECF No. 23 at 7. That is true, see Policy at 1, but it is irrelevant to the resolution of the parties' dispute because the policies treat "Maximum Benefit Period" as a term of art (signaled by its capitalization), and the policies' provisions concerning residual disability benefits expressly allow such benefits to be terminated

_____

the payment of total disability benefits only to the "Maximum Benefit Period shown in the policy schedule," which in Levy's case was his lifetime. See Policy at 1, 4.

where the "combined period" exceeds either the Maximum Benefit Period or twenty-four months after an insured's sixty-third birthday, see id. at 4. While the term "Maximum Benefit Period" may have been poorly chosen, the policies' language is not ambiguous because the policies define that term clearly and expressly provide that there are multiple sets of circumstances in which residual disability benefits may be terminated.[6]

Third, Levy urges the Court not to follow Lax v. Monarch Life Insurance Company, No. 24 Civ. 4249, 2024 WL 4528189, at *6-7 (S.D.N.Y. Oct. 18, 2024), in which another court in this District concluded that insurance policies containing almost identical language to Levy's "unambiguously provide that Defendant may cease residual disability payments if the period for which benefits are paid exceeds twenty-months after Plaintiff's 63rd birthday." According to Levy, Lax is inapposite because the court in that case did not decide "whether periods of total disability occurring before age 63 could be aggregated to trigger the 24-month limitation." ECF No. 23 at 9-10.

Defendants heavily rely on Lax and, in doing so, wrongly attempt to give it an authority it cannot possess. For instance, defendants characterize Lax as "conclusive[]," ECF No. 20 at 8, and "dispositive," id. at 11; ECF No. 24 at 5-6. But while this Court has great respect

---

[6] Levy argues that because defendants drafted the policies, any ambiguity must be construed against them and in favor of coverage. ECF No. 23 at 9. That is an accurate statement of the law, see, e.g., Rappaport v. Guardian Life Ins. Co. of Am., 782 F. Supp. 3d 109, 125-26 (S.D.N.Y. 2025), but the doctrine of contra proferentem is inapplicable here because the policies' language is not ambiguous.

for other courts in this District, and indeed for district courts throughout the Nation, it is black-letter law that "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." See Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011). But while Lax is not binding and concerns somewhat different issues than Levy's case, Lax is nevertheless persuasive authority that the Court finds helpful. Specifically, and for the reasons already given above, the Court agrees with the court in Lax that the language in question permits an insurance company to "stop paying residual disability benefits if the payment duration has exceeded either of these periods of time," referring to "the maximum benefit period; or 24 months after [the insured's] 63rd birthday." Lax, 2024 WL 4528189, at *7.

For all these reasons, the Court concludes that Levy has failed to state a claim for breach of contract.

B.    Remaining Claims

Count Two of Levy's complaint asserts a claim for breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 57-65. Count Three seeks a declaratory judgment that Levy is entitled to lifetime monthly residual disability benefits, so long as he continues to satisfy the policies' definition of residual disability. Id. ¶¶ 66-70. Count Four asserts a separate claim for breach of contract, alleging that defendants wrongfully ceased waiving Levy's premiums and treated the policies as terminated. Id. ¶¶ 71-81. The first two of

11

these claims are duplicative of Count One, Levy's claim for breach of contract, and must for that reason be dismissed. Count Four, moreover, must be dismissed for lack of standing and as unripe.

As to Count Two, New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). Levy's implied covenant claim is duplicative in precisely this manner because he alleges that defendants deprived him of the benefit of the policies by wrongfully terminating his benefits. Levy contends otherwise, arguing that defendants "engaged in bad faith claims administration" by, among other things, terminating his residual disability benefits after paying them for years. See ECF No. 23 at 13-14. But Levy's complaint contains no factual allegations regarding defendants' purported bad-faith conduct that do not also pertain to Levy's claim for breach of contract. Accordingly, Count Two is duplicative of Count One and must be dismissed.

Count Three, likewise, duplicates Levy's contract claim. It is well settled that "declaratory judgment claims that duplicate substantive claims should be dismissed." Beach v. HSBC Bank USA, N.A., No. 17 Civ. 5153, 2018 WL 3996931, at *7 (S.D.N.Y. Aug. 21, 2018) (collecting cases). As defendants point out, the relief that Levy seeks via his claim for declaratory judgment -- that is, a declaration that he is, "under the Policies, . . . entitled to lifetime residual disability benefits" -- is duplicative of the relief that Levy would

receive if he were successful on Count One. See ECF No. 20 at 14-15. Moreover, as with Count Two, "the declaratory judgment and breach of contract claims arise from the same set of facts." See Beach, 2018 WL 3996931, at *7. Accordingly, the Court concludes that Levy's claim for declaratory judgment must be dismissed.

Finally, Count Four asserts that defendants breached their contract with Levy by ceasing to waive his premiums after terminating his residual disability benefits. Levy lacks standing to bring this claim because Levy's complaint does not allege that he paid premiums during his period of disability or that he owed defendants any premiums after the policies were terminated. See Compl. ¶¶ 71-81; ECF No. 24 at 8-9. Hence, notwithstanding Levy's conclusory assertion that defendants' conduct "caused [him] harm," Levy has not pled that he suffered any injury in fact that a judgment of this Court's could likely redress. See, e.g., Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). Moreover, to the extent that Levy seeks "continued waiver of premiums in accordance with the Policies" upon the "reinstatement" of his coverage -- the remedy that he seeks via Counts One, Two, and Three -- Levy's claim is unripe for adjudication because his alleged injury is, at this point, "conjectural or hypothetical." See, e.g., Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 688-89 (2d Cir. 2013). Count Four, therefore, must be dismissed for lack of subject matter jurisdiction.[7]

_____

[7] Even if the Court had jurisdiction to reach the merits of Count Four, it would fail, as a matter of law, because it is premised on Levy's

IV.    Conclusion

For the reasons set forth above, the Court hereby grants defendants' motion to dismiss Levy's complaint in its entirety and with prejudice. The Court hereby denies Levy leave to amend the complaint because the deficiencies in his claims all relate to unreasonable interpretations of the policies and, thus, cannot be remedied by amendment. See Porat, 464 F.3d at 276.

The Clerk of Court is respectfully directed to terminate the motion at docket entry 19 and to close this case.

SO ORDERED.

Dated:    New York, NY
          January 13, 2026                    _____
                                              JED S. RAKOFF, U.S.D.J.

_____

argument that defendants wrongfully terminated his benefits, which the Court rejected above.

14